UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OBIDIE DAVIS, JR.,

     Plaintiff,               CIVIL ACTION NO. 08-12528

v.                         DISTRICT JUDGE LAWRENCE P. ZATKOFF
                         MAGISTRATE JUDGE DONALD A. SCHEER

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION:  Plaintiff's Motion for Summary Judgment should be DENIED, and

that of Defendant GRANTED, as substantial evidence exists on the record that claimant

remains capable of performing a significant number of jobs in the economy.

\*   \*   \*

     Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI) benefits on October 7, 2005, alleging that he had

become disabled and unable to work on February 1, 2003, at age 46, due mental

retardation. Benefits were denied by the Social Security Administration. A requested de

novo hearing was held on September 12, 2007, before Administrative Law Judge (ALJ)

Richard Sasena. The ALJ found that the claimant was not entitled to disability benefits

because he retained the ability to perform a significant number of jobs existing in the

economy. The Administrative Law Judge determined that the claimant could work at all

exertional levels from sedentary to heavy, but could not perform complex assignments in

high stress environments.  These jobs required little judgment and could be learned in a

relatively short period. The ALJ also restricted Plaintiff from jobs involving more than

minimal contact with supervisors, co-workers or the general public. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 50 years old at the time of the administrative hearing (TR 130). He had a tenth grade education, and had been employed during the relevant past as a machine operator (TR 54-55, 133). As a machine operator, Plaintiff stood for most of the workday. He constantly had to handle, grip and manipulate large and small objects. He lifted up to 50 pounds on a regular basis (TR 55).

Claimant testified that he worked as a machine operator for nine years at Belleville Plating until the plant went out of business (TR 130). Plaintiff explained that he had not looked for any other work since the plant closed because he was "slow in doing things" (TR 130). Claimant estimated that he could maintain attention for about a minute, but contended that he was unable to follow written instructions (TR 68). The claimant had a driver's license, but it had been suspended for driving under the influence of alcohol (TR 133-134). During a typical day, the claimant said that he mowed the lawn, did his laundry and helped his mother grocery shop (TR 133). He often walked or jogged for exercise, and enjoyed playing basketball until he injured his ankle (TR 135). The claimant's mother, Mary Hill, testified the she needed to help her son with day to day tasks (TR 137). She stated that her son was unable to keep a job because he became easily confused (TR 138).

A Vocational Expert, Harry Cynowa, classified Plaintiff's past work as light, unskilled activity (TR 142). If the claimant was physically capable of light work activity, the witness

testified that there were numerous unskilled assembly, sorting, packaging and visual inspection jobs that Plaintiff could perform. These jobs did not necessitate working with the general public or maintaining close contact with supervisors or co-workers (TR 142-143). These low-stress jobs did not require performing complex tasks. They allowed periodic breaks, and did not impose high production demands (TR 143).

LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as a result of learning and cognitive disorders as well as mild mental retardation, but that these impairments were not severe enough to meet the Listing of Impairments. The ALJ recognized that the claimant's impairments precluded him from performing complex tasks, and from frequent contact with the general public, supervisors and/or co-workers, but found that he retained the residual functional capacity to perform a reduced range of heavy, light and sedentary unskilled work, within those limitations, as identified by the Vocational Expert.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide

questions of credibility.  See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  Kirk, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff maintains that his learning/cognitive disorders and mental retardation have prevented him from returning to work.  The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his previous work or any other substantial, gainful activity existing in the national economy, considering his age, education and work experience.  42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.1505 (2008).

LEGAL FRAMEWORK

Once it has been determined that a claimant is not currently engaged in substantial, gainful activity and his impairment is indeed severe, the third stage in the evaluation process mandates a consideration of whether the relevant criteria in the Listing of Impairments (Appendix 1) have been met.  The Listing of Impairments describes, for each of the major body systems, medical illnesses which are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a) (2008).  The

regulations provide that when a claimant can prove that he suffers from an impairment that meets the duration requirement (12 months) and is listed in Appendix 1, the Commissioner must automatically find the claimant disabled, and should not go on to consider the claimant's age, education and work experience. 20 C.F.R. § 404. 1520(d) (2008). A claimant will not be found disabled under a listing, however, if there is a failure to satisfy any one of the criteria established for a particular impairment. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984), 20 C.F.R. §404.1525(d).

Claimant argues that the ALJ erred in finding that his mental impairment did not meet section 12.05(B) and (D) of the Listing of Impairments. Section 12.05, in relevant part, requires:

> Mental Retardation: Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e. the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> ***
> D. A valid verbal, performance, or full scale IQ of 60 through 70 resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.
>
> 20 C.F.R. Pt 404, Subpt. P, App 1, § 12.05.

RELEVANT MEDICAL EVIDENCE

Following the administrative hearing, the Administrative Law Judge sent the claimant for psychological and intelligence testing.  Plaintiff was interviewed by Dr. Nick Boneff, a licensed psychologist, and his assistant, on October 5, 2007, in order to evaluate his mental status. Upon examination, the claimant appeared to be very immature and child-like (TR 117). He looked to his mother for information during the interview, and responded primarily with single words or nods of his head (TR 117). Plaintiff  said that he lived with his mother and sometimes accompanied her to the store in order to help load groceries.

Claimant understood that he was being evaluated for social security disability purposes (TR 117).  His affect was dull, but was not inappropriate.  Mood was somber and reserved. He was alert times three, and claimed that he never had disturbances of thought, paranoia or obsessive ideation (TR 118).

In a residual functional capacity evaluation, the examiners noted that Plaintiff had marked impairments in his ability to make judgments concerning complex work-related decisions, and he was unable to carry out complex instructions (TR 120). Plaintiff was found to have a mild impairment in responding appropriately to changes in work routines (TR 121).

Claimant's concentration and attention were considered adequate during the administration of cognitive and memory tests.  He appeared motivated and eager to do his best.  Spelling and math tests showed that he was at a first grade level, and he read at a low second grade level (TR 118).  The results of intelligence tests were as follows:

> Verbal IQ= 58
> Performance IQ= 58
> Full Scale IQ= 54

Plaintiff's performance showed him to be in the mildly mentally retarded range of intellectual functioning (TR 118).

MEETING LISTING 12.05(B)

With verbal, performance and full scale intelligence scores well below 60, Plaintiff needs to prove that his deficits in adaptive functioning (caused by sub-average intellectual functioning) manifested itself before age 22, in order to meet section 12.05(B) of the Listing of Impairments. The parties acknowledge that the claimant was never tested for low intelligence before reaching age 22. Consequently, in order to determine the degree of retardation prior to adult maturity, the ALJ considered the fact that Plaintiff dropped out of school of his own volition in order to attend a trade school, and that he was not enrolled in special education classes (TR 17, 117, 133). Moreover, the claimant was able to work for nine years as a machine operator before losing his job when the plant closed.

The Sixth Circuit in Foster v. Halter, 279 F.3d. 348 (6th Cir. 2001), noted that an employee's ability to work as a bank and retail clerk showed that she did not have deficits in adaptive functioning prior to age 22. Id. at 355. Like the Plaintiff here, the adult employee in Foster had not been tested during her formative developmental period. Since the ALJ reasonably found that Plaintiff had failed to meet the threshold requirement of Listing 12.05 (adaptive deficits manifested before age 22), he correctly found that the claimant did not meet section 12.05(B) of the Listing of Impairments.

MEETING LISTING 12.05(D)

In order to meet section 12.05(D) of the Listing of Impairments, Plaintiff must demonstrate that his mental retardation caused two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked

difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt 404, Subpt. P, App 1, § 12.05. The evidence of record shows that Plaintiff remains capable of performing a variety of daily activities and that he is able to communicate effectively with others.[1]

Plaintiff told examiners that he enjoyed watching television, helped with household chores, and was able to cook for himself (TR 95). Claimant testified that he mowed the lawn, removed weeds, did a little cooking, and jogged or walked for exercise (TR 133, 135). Plaintiff also testified that he used to play basketball with friends before injuring his ankle (TR 135). Moreover, the claimant only stopped operating an automobile when his license was suspended for driving under the influence of alcohol (TR 133-134). The ALJ also considered the fact that Plaintiff was able to work as a machine operator for nine continuous years (TR 16, 129-130). Given this evidence, the Administrative Law Judge reasonably determined that claimant's daily activities and social functioning were, at most, moderately restricted.

While Plaintiff alleged that his periodic depression and mental retardation interfered with his memory and ability to concentrate,[2] he also indicated that he was able to read newspapers, watch television and help his mother go grocery shopping (95, 136). The

---

[1]The first area of the B criteria, known as "activities of daily living", includes cleaning, shopping, cooking, maintaining a residence, using the telephone and caring for one's grooming and hygiene. The second area, social functioning, refers to an individual's capacity to interact appropriately and communicate effectively with others, including family, friends and merchants.

[2]The third area of function evaluated under the "B" criteria is concentration, persistence, and pace, which refers to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).

ability to read or watch televison stands in sharp contrast to his allegation that he suffered from a complete inability to concentrate. Dr. Baddigam, an examining psychiatrist, reported in November 2006, that Plaintiff was well oriented, logical and goal directed. Sensorium and cognition were said to be intact, and his insight and judgment were not impaired (TR 95). Furthermore, the claimant's ability to read, perform household chores and do yard work suggests that he retained at least a minimal level of concentration as would be required for performing the unskilled jobs identified by the Vocational Expert.

The last area of function under the "B" criteria is deterioration or decompensation in work or work-like settings, which refers to the "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). Dr. Nick Boneff indicated in October 2007 that the claimant could maintain socially appropriate behavior, and keep up basic standards of neatness and cleanliness (TR 117). The doctor added that Plaintiff could understand, remember and carry out simple instructions, and interact appropriately to changes in routine work settings (TR 121). Claimant reportedly had adequate concentration and attention spans (TR 118). Dr. Boneff gave him a GAF rating of 55 (TR 119), which is consistent with the ability to perform simple, routine work activities. No physician imposed a specific work preclusive limitation on claimant's functioning. Although the claimant contended that periodic depression and anxiety caused profound cognitive limitations, he was never hospitalized for psychiatric reasons (TR 117).

The claimant's periodic depression was no doubt exacerbated by the emotional pain of being laid off from a job that he held for nine years. The medical evidence failed to show

that the claimant has suffered any episodes of decompensation. Plaintiff's ability to remain motivated and eager to do his best while understanding that he was being evaluated for social security  purposes (Tr 117-118) suggests that he does not suffer disabling anxiety, depression or anger. Furthermore, the types of unskilled jobs identified by the Vocational Expert (assembly, sorting and packaging) would not cause a great deal of stress.  These entry level jobs did not involve dealing with the public, co-workers or supervisors (TR 142-143). The Law Judge properly found that the degree of limitation for each of the four B criteria was only moderate and not severe. As a result, Plaintiff did not meet the requirements of the Listing of Impairments.

It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence.  Such observation is invaluable and should not be discarded lightly.  Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978).  See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various

impairments[3]. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous unskilled assembly, sorting, packaging and visual inspection jobs that Plaintiff could perform. These jobs did not necessitate working with the general public or maintaining close contact with supervisors or co-workers (TR 142-143). These non-stressful jobs did not require performing complex tasks. They allowed periodic breaks, and did not impose high production demands (TR 143). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of work activity at all exertional levels.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof

---

[3]The Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described Plaintiff's moderate limitations caused by his mental retardation and learning disability. The Sixth Circuit has held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. Webb v. Commissioner, 368 F.3d 629, 633 (6th Cir. 2004). There is also no merit to Plaintiff's argument that the ALJ should have included a limitation that he had marked limitations in carrying out complex instructions and making judgments on complex work-related decisions. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment. 20 C.F.R. 404.1568(a). Under these circumstances, the ALJ's hypothetical question accurately portrayed Plaintiff's impairment.

as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: November 24, 2008

_____

## CERTIFICATE OF SERVICE

I hereby certify on November 24, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on November 24, 2008: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217