UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OBIDIE DAVIS, JR.

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

CASE NO. 08-12528
HON. LAWRENCE P. ZATKOFF
MAG. DONALD A. SCHEER

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 10, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

Plaintiff filed the instant action seeking Social Security disability insurance benefits. This matter currently comes before the Court on Magistrate Judge Scheer's report and recommendation of November 24, 2008, in which the Magistrate Judge recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted. Plaintiff has filed objections to the Magistrate's report and recommendation to which Defendant has responded. The Court has thoroughly reviewed the court file, the respective parties' motions, the report and recommendation, Plaintiff's objections, and Defendant's response to Plaintiff's objections. For the reasons discussed below, the Court does not adopt Magistrate Scheer's report and recommendation. Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion is DENIED.

**II. BACKGROUND**

Plaintiff filed applications for Social Security disability benefits and supplemental security income benefits on October 7, 2005, alleging that he was disabled and unable to work on account of mental disability. After the Social Security Administration denied benefits, Plaintiff requested a de novo hearing, which was held on September 12, 2007, before Administrative Law Judge ("ALJ") Richard Sasena. The ALJ found that Plaintiff was not entitled to disability benefits because he retained the ability to perform a significant number of jobs existing in the national economy. The Appeals Council declined to review the ALJ's decision. Plaintiff then commenced this suit for judicial review of the denial of benefits. The underlying facts of Plaintiff's case are satisfactorily set forth in Magistrate Scheer's report and recommendation [dkt 17].

### III. LEGAL STANDARD

The Court examines an ALJ's decision to determine if the correct legal standard was used and if the findings are supported by substantial evidence. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The ALJ's decision "is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id.* Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The substantial-evidence standard "does not permit a selective reading of the record." *Davis v. Apfel*, 133 F. Supp. 2d 542, 547 (E.D. Mich. 2001). Rather, "substantiality of the evidence must be based upon the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### IV. ANALYSIS

Plaintiff contends that the ALJ erred in determining that substantial evidence did not support his alleged disability. Plaintiff notes that he has a low intelligence quotient ("IQ"); is dependent on his mother; has held only one job, which he acquired through his step-father's relationship with the boss; and cannot hold any other jobs because he is "too slow." In response, Defendant notes that Plaintiff maintained employment for nine years, voluntarily dropped out of high school in the tenth grade, previously held a driver's license, and is able to perform basic daily activities.

Plaintiff bears the burden of establishing his disability and entitlement to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). An individual is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). To determine disability, the Commissioner has prescribed a five-step sequential process, set forth in 20 C.F.R. § 404.1520. As applied to this case, the ALJ first determined that Plaintiff is not currently engaging in substantial gainful activity. At step two, the ALJ concluded that Plaintiff suffers from the following severe impairments: cognitive disorder, learning disorder, and mild mental retardation. With respect to step three, the ALJ found that Plaintiff's impairments, although severe, did not satisfy sections 12.05(B) and 12.05(D) of the Social Security Administration's Listing of Impairments. Regarding steps four and five, the ALJ concluded that Plaintiff is unable to perform his past relevant work but nonetheless can perform a number of jobs that exist in the national economy. The ALJ's determination that Plaintiff is not entitled to benefits rests on steps three and five.

**A. STEP THREE**

Step three requires the ALJ to determine whether Plaintiff's impairment or combination of

impairments—in this case, cognitive disorder, learning disorder, and mild mental retardation—meets or medically equals the criteria of an impairment set forth in the Social Security Act. Section 12.05 of the Social Security Administration's Listing of Impairments explains that "mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22." Section 12.05 contains four subsections, which outline specific requirements for establishing a mental disability. To establish the impairment of mental retardation, Plaintiff must not only meet the criteria of one of the four subsections, but he must also satisfy the diagnostic description in the introductory paragraph of section 12.05. 20 C.F.R. § 404P, appx. 1, § 12.00(A). Of particular relevance to Plaintiff, subsection B applies to individuals with "a valid verbal, performance, or full scale IQ of 59 or less."

In this case, Plaintiff possesses a verbal IQ of 58, a performance IQ of 58, and a full scale IQ of 54. The legitimacy of these results is not in dispute. Therefore, Plaintiff falls squarely into the range contemplated by subsection B. The fact that Plaintiff's IQ was not tested until well after he attained 22 years of age is immaterial. IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life "absent evidence of sudden trauma that can cause retardation." *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001). Therefore, Plaintiff does not need to produce IQ test results that precede his twenty-second birthday. *See, e.g.*, *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007) ("While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, a claimant is by no means *required* to produce an IQ score obtained prior to age 22." (emphasis in original) (citation omitted)); *Pearson v. Comm'r*

*of Soc. Sec.*, No. 07-509, 2008 U.S. Dist. LEXIS 83876, at *15 (W.D. Mich. May 19, 2008) ("That this test was not administered until well after Plaintiff attained the age of 22 is of no consequence."). The record is devoid of any suggestion that Plaintiff's condition was transient, the product of an accident, or otherwise developed recently. In a similar case, the court reversed the Commissioner's findings in part because the plaintiff met the threshold IQ and there was no other evidence suggesting that his condition developed later in his life. *Davis*, 133 F. Supp. 2d at 547. Likewise, in this case, there is no evidence establishing Plaintiff's IQ above the range set forth in 12.05(B) at any time in his life. Further, there is no dispute with respect to the legitimacy and validity of his IQ scores. Plaintiff therefore satisfies the IQ requirement of section 12.05(B).

The ALJ relied on other factors in determining that Plaintiff failed to prove that his deficits in adaptive functioning manifested before he reached the age of 22. The ALJ noted that "Claimant dropped out of school of his own volition during the tenth grade. He testified that he was not enrolled in special education courses." The ALJ acknowledged, however, that Plaintiff's mother "testified that some of his classes were special education courses, and some evidence of record tends to support her." The ALJ gave little weight to this testimony because "the record is devoid of any evidence as to how many such courses he took, and the exact reason he took them." Further, the ALJ pointed to Plaintiff's nine years of employment as inconsistent with a finding that Plaintiff suffers from a subaverage general intellectual functioning. Finally, the ALJ found that there was no evidence to suggest that Plaintiff's impairment had its onset before he turned 22-years old.

The ALJ's findings are not supported by substantial evidence when considering the record in its entirety. Unfortunately, in the age of social promotion, the grade level one achieves does not always align with his abilities. In this instance, Plaintiff has extremely remedial reading, language,

and mathematical skills. Coupled with his low IQ, it stands evident that Plaintiff was not operating within the range of average tenth graders. This conclusion is bolstered by the fact that Plaintiff could not keep pace at trade school and ultimately dropped out. Further, the ALJ acknowledged that some evidence in the record supports the contention of Plaintiff's mother that Plaintiff took special-education courses. The ALJ summarily dismissed this evidence because Plaintiff testified that he did not enroll in such classes and because it was unclear how many such courses he took and why he took them. Yet, the record reflects that Plaintiff's memory and basic understanding are below average. Based on the record in this case, the ALJ had some evidence that Plaintiff enrolled in special-education courses and no significant evidence to the contrary. The ALJ's contention that there was no evidence as to "the exact reason" Plaintiff enrolled in special-education courses is almost incomprehensible in light of the record.

The record also establishes facts probative of Plaintiff's life-long disability. He has always lived with his mother who continues to be his primary caretaker. Plaintiff's mother must leave reminders for Plaintiff to tend to his hygiene and she actually shaves Plaintiff. Despite Plaintiff's testimony that he cooks, the record establishes that while he is able to microwave frozen meals, he is forbidden from operating a stove. The majority of chores he performs are done alongside his mother. Even throughout psychological examinations, Plaintiff turned to his mother for assistance in answering questions. Plaintiff was unable to complete the Minnesota Multiphasic Personality Inventory despite the fact that his mother read each question aloud to him. After two hours, he had completed only three-fourths of the test and "was clearly fatigued and no longer able to focus and concentrate to complete the questions."

The ALJ's ultimate determination largely focused on the fact that Plaintiff was employed for

nine years as a machine operator. Evidence in the record establishes that Plaintiff was employed by virtue of his step-father's connections. Prior to that position and since the termination of that position, Plaintiff has been unable to secure meaningful employment for any period of time. Under these circumstances, the Court finds that Plaintiff's one employment position does not constitute "substantial evidence" that he is not disabled. The case Defendant cites in support of its position, *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), is easily distinguishable. In *Foster*, the plaintiff had an IQ in the range of 68–69, and previously worked as an accounting clerk and as a liquor-store clerk, demonstrating an "ability to perform relatively complicated tasks." *Id.* at 355. Moreover, the prior work experience present in *Foster* did not indicate that the plaintiff obtained the positions through assistance or family connections. Finally, unlike the case now before the Court, the *Foster* opinion contains no discussion of the plaintiff's remedial skills, below-average memory, and overall problems in day-to-day functioning. In light of the foregoing, the ALJ erred in concluding that substantial evidence supported a finding that Plaintiff was not disabled.

## B. STEP FIVE

At step five, the ALJ must determine whether the claimant is able to do any other work in society, taking into consideration his residual functional capacity, age, education, and work experience. During this assessment, a slight burden is placed upon the Social Security Administration to demonstrate the existence of other work possibilities in significant numbers in the national economy given the aforementioned considerations. *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

In determining whether Plaintiff could perform other work in society, the ALJ solicited the opinion of a vocational expert. The ALJ posed the following hypothetical to the vocational expert:

> I'm going to ask you some hypothetical questions about an individual of Mr. Davis's age which is closely approached advanced age 50 to 54. And his education which is limited to or less than eleventh grade. If such an individual is limited to simple, routine, repetitive tasks that require little judgment and can be learned in a short period with no interaction with the public, and only occasional interaction with co-workers, he could be in proximity, but would not be working as a team member, with those limitations could the past relevant work be done?

After the vocational expert opined that such past relevant work could not be done, the ALJ inquired whether any work would be available under such restrictions. The vocational expert suggested that several thousand positions qualified in the national economy, including visual inspector, checker, small products assembler, and hand packager. The ALJ then bolstered his hypothetical by limiting work to a low-stress environment with no production rate work. The vocational expert testified that such additional limitations would not alter his answers.

Although the ALJ's hypothetical accurately conveys several of Plaintiff's limitations, it nonetheless omits several critical elements. The ALJ intimated that Plaintiff nearly completed 11 grades of schooling but failed to mention that Plaintiff has only an IQ of 54, took special-education courses, or that he can only read and comprehend at levels equivalent to that of first- and second-grade students. A hypothetical for the purpose of eliciting vocational-expert testimony does not need to list the claimant's medical conditions, but it must "reference all of a claimant's limitations." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The omissions present in the ALJ's hypothetical render it flawed and therefore, the vocational expert's answers are "not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Malthious v. Barnhart*, 490 F. Supp. 2d 833, 841 (E.D. Mich. 2007).

    **C. REMEDY**

The question remains whether a remand for an award of benefits or for further proceedings is appropriate.  A remand for an award of benefits is appropriate when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  Moreover, "a judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*  In this case, for the reasons set forth above, the record establishes Plaintiff's entitlement to benefits.

## V.  CONCLUSION

Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED.  The case is REMANDED to the Commissioner for computation of benefits.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2009


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record

by electronic or U.S. mail on February 10, 2009.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290